IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANDARION LORENZO MCINNIS,
   Petitioner,
v.
                   Civil Action No. 3:20cv561
JOHN A. WOODSON,
   Respondent.

## MEMORANDUM OPINION

Andarion Lorenzo McInnis, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 6), challenging his convictions in the Circuit Court for the City of Virginia Beach ("Circuit Court").[1] The respondent has moved to dismiss on the grounds that McInnis's claims are procedurally barred or otherwise lack merit. (ECF No. 26.) McInnis has filed a response. (ECF No. 29.) The Motion to Dismiss, (ECF No. 26), will be GRANTED, the § 2254 Petition, (ECF No. 6), will be DENIED, and the action will be DISMISSED.

## I. PROCEDURAL HISTORY

After a jury trial, McInnis was convicted of use of a firearm in the commission of a murder, use of a firearm in the commission of a robbery, robbery, and conspiracy to commit robbery. *McInnis v. Commonwealth*, No. 1937–17–1, 2018 WL 6313708, at *1 (Va. Ct. App. Dec. 4, 2018).[2] The Court of Appeals of Virginia affirmed his convictions. *Id.*

---

[1] McInnis submitted his § 2254 Petition on a form for filing a 28 U.S.C. § 2241 petition. (ECF No. 6.) Nevertheless, because he is challenging his state court convictions, the Court construes his submission as a § 2254 Petition. *See In re Wright*, 826 F.3d 774, 779 (4th Cir. 2016) ("[R]egardless of how they are styled, federal habeas petitions of prisoners who are 'in custody pursuant the judgment of a State court' should be treated 'as applications under section 2254' . . . even if they challenge the execution of a state sentence.")

[2] The jury found McInnis not guilty of murder. *Id.* at *1, n.1.

Thereafter, McInnis filed a petition for appeal in the Supreme Court of Virginia, in which he raised a single assignment of error:

> The Court of Appeals erred in finding that McInnis's failure to raise Code Section 19.2–295.1 in its objection to the Admission of Facebook posts during the sentencing phase prevented the trial court from timely consideration of the objection and a proper ruling on its merits.

Petition for Appeal, *McInnis v. Commonwealth*, No. 190073, at 4 (Va. filed Jan. 15, 2019).

On July 17, 2019, the Supreme Court of Virginia refused McInnis's petition for appeal. *McInnis v. Commonwealth*, No. 190073, at 1 (Va. July 17, 2019). The respondent maintains that McInnis did not file a state petition for a writ of habeas corpus. (*See* ECF No. 27, at 4.)[3]

On July 22, 2020, the Court received McInnis's original § 2254 petition in this action. (ECF No. 1.) On October 27, 2020, the Court received a second draft of McInnis's § 2254 Petition that that the Court accepted for filing. (ECF No. 6.) McInnis raises four claims:

| Claim One: | "[D]efense counsel failed to investigate what led to [McInnis's] arrest, who was accusing [McInnis] of such crimes, and why [McInnis] was not given the opportunity to confront [his] accuser." (*Id.* at 6.) |
|---|---|
| Claim Two: | "False testimony and evidence used to obtain [McInnis's] conviction was unjust, thus violating [McInnis's] Due Process [rights] granted to [him] by the 5th, 6th, and 14th Amendments of the United States [Constitution]." (*Id.* at 7.) |
| Claim Three: | "[I]f the false testimony and evidence were not used, no trier of facts could have found proof of guilt beyond a reasonable doubt, thus [McInnis's] Due Process rights would not have been violated." (*Id.*) |
| Claim Four: | "[D]efense counsel failed to object to insufficiency of evidence in support of guilty verdict." (*Id.* at 8.) |

---

[3] The Court employs that pagination assigned by the CM/ECF docketing system. The Court corrects the spelling, punctuation, and capitalization in quotations from the parties' submissions.

2

## II. **PROCEDURAL DEFAULT**

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "is rooted in considerations of federal-state comity," and in a Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (some internal quotation marks omitted) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92, 492 n.10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks and citation omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before the petitioner can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "opportunity" to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quoting *Duncan*, 513 U.S. at 365–66). Fair presentation demands that a petitioner present "both the operative facts and the controlling legal principles" to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir.

3

2004) (internal quotation marks omitted) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n.1).[4] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citations omitted). Absent a showing of "cause for the default and actual prejudice as a result of the alleged violation of federal law," or a showing that "failure to consider the claims will result in a fundamental miscarriage of justice," this Court cannot review the merits of a defaulted claim. *Coleman*, 501 U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 262 (1989).

The respondent argues that Claims One and Four are procedurally defaulted because McInnis did not present them to the Supreme Court of Virginia, and under Va. Code § 8.01–

---

[4] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

4

654(A)(2), the time for doing so has passed. (ECF No. 27, at 4–5.) McInnis contends that he did file a state habeas petition and suggests that he raised the issues contained in Claims One and Four in that petition. (ECF No. 29, at 1; ECF No. 29-4, at 1–2.) While McInnis's statements are dubious in light of his prior statements to the Court, (*see* ECF No. 6, at 6), and the records received from the state courts, the respondent has failed to address them. Given this factual dispute, the respondent fails to carry his burden of proving that Claims One and Four were procedurally defaulted. *See Jones*, 591 F.3d at 716. Accordingly, the Court will address the merits of Claims One and Four.

With regard to Claims Two and Three, however, the respondent offers a somewhat more nuanced argument. In Claim Two, McInnis argues that "[f]alse testimony and evidence [was] used to obtain [his] conviction[s] . . ., thus violating [his] Due Process [rights]." (ECF No. 6, at 7.) Similarly, in Claim Three, McInnis posits that "if the false testimony and evidence were not used, no trier of facts could have found proof of guilt beyond a reasonable doubt." (*Id.*)

The respondent does not argue that Claims Two and Three were defaulted in whole because, as discussed below, the Virginia Court of Appeals considered and rejected McInnis's challenge to the sufficiency of the evidence—including a specific challenge to the credibility of a witness's testimony—on direct appeal. (ECF No. 27, at 5, 7.) The respondent, however, correctly notes that, with respect to Claims Two and Three, McInnis has procedurally defaulted any aspect of those claims outside of the challenge to the sufficiency of the evidence and the witness's credibility that he raised before the Virginia Court of Appeals. (*See* ECF No. 27, at 7, n.2.)

To the extent that McInnis is now attempting to bring any new claims of false evidence or any new challenges to the credibility of witnesses that were not presented to the Virginia Court of Appeals, those claims are procedurally barred pursuant to the rule in *Slayton v. Parrigan*, 205

5

S.E.2d 680, 682 (Va. 1974), because McInnis could have raised, but failed to raise, these issues on direct appeal. *Slayton* constitutes an adequate and independent procedural rule when so applied. *See Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir. 2000); *Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997). Accordingly, Claims Two and Three are procedurally defaulted in part.

## III. APPLICABLE CONSTRAINTS UPON HABEAS REVIEW

To obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).[5]

---

[5] The Court looks to the June 7, 2018, opinion of the Court of Appeals of Virginia, (ECF No. 25–1), to resolve Claims Two and Three. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)

6

## IV. SUFFICIENCY OF THE EVIDENCE

A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318. In Claims Two and Three, McInnis challenges the sufficiency of the evidence. (*See* ECF No. 6, at 7.)

In rejecting McInnis's challenge to the sufficiency of the evidence on direct appeal, the Court of Appeals of Virginia aptly summarized the evidence of McInnis's guilt, and the relevant law as follows:

> Appellant challenges the sufficiency of the evidence to support his convictions of robbery, conspiracy to commit robbery, using a firearm during the commission of robbery, and using a firearm during the commission of murder or attempted murder.[6] "When considering on appeal the sufficiency of the evidence presented below, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" *Kelly v. Commonwealth*, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc) (quoting *Davis v. Commonwealth*, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002)). "On appeal, we will consider the evidence in the light most favorable to the Commonwealth, as it prevailed in the trial court." *Whitehurst v. Commonwealth*, 63 Va. App. 132, 133, 754 S.E.2d 910, 910 (2014).
> On May 1, 2016, Ryan Umstot met his friend Bryant Cueto in Chesapeake. Cueto put something inside the trunk of Umstot's car, and they drove away together. Cueto and Umstot smoked some marijuana. Umstot agreed to drive Cueto to Virginia Beach to "pick up some money." After stopping at a Taco Bell, Cueto had Umstot park at an Applebee's restaurant on General Booth Boulevard. Five

---

("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

[6] The jury found appellant not guilty of felony murder.

7

minutes later, a man arrived in a vehicle and sold some Xanax to Cueto. When he returned to the car with Umstot, Cueto had a bag containing about 300 doses of Xanax in bar form. Cueto said he was going to sell some Xanax to someone who was coming to meet him; he and Umstot agreed that 100 Xanax pills for $300 was a fair deal.

At about 5:30 p.m., two African-American males approached Umstot's car. At trial, Umstot identified the two individuals as appellant and Jacquan Wilson. Appellant came to the driver's side of the car and placed his hands on the door. Wilson got into the back seat of the car behind Cueto. Cueto pulled out the bag of Xanax and started counting pills. Appellant nodded his head, and Wilson pulled out a gun. Cueto did not surrender the bag of drugs. Appellant then said, "Pop him." Wilson shot at Cueto and ripped the bag of drugs from his hands. Appellant and Wilson fled toward the front of Applebee's.

Umstot started driving toward the hospital because Cueto was bleeding and unresponsive. At 5:52 p.m., as Umstot was driving, he called 911 and reported the shooting. He indicated that the shooting had happened at Applebee's and that the two suspects were African-American males.

Umstot stopped the vehicle near Princess Anne Park on Dam Neck Road because he thought Cueto had stopped breathing. He waved down a passing police vehicle to get assistance. Umstot was obviously upset by the situation. The police removed Cueto from the vehicle and performed CPR on him. Emergency medical personnel transported Cueto to the hospital. Cueto died from a gunshot wound to the torso.

During his initial interaction with the police when the officers were trying to help Cueto, Umstot indicated he did not know why his friend had been shot. When the officers pressed Umstot further, he said that Cueto was shot during a drug deal for Xanax at the Applebee's on General Booth Boulevard. Umstot said two African-American males, whom he did not know, were involved in the transaction with Cueto. Umstot said that Cueto had been shot after he pulled out the drugs. There was an odor of marijuana about the vehicle, but Umstot denied that he had used marijuana.[7]

At trial, Umstot admitted that when the police initially questioned him on the night of the shooting he did not tell the truth because he feared returning to jail for a probation violation, and he was upset because Cueto had just been killed. He also wanted to cover for Cueto having purchased Xanax at the Applebee's. Umstot explained that he had just endured a traumatic event, so he did not mention appellant nodding and giving Wilson the order to shoot Cueto. However, when the police questioned Umstot again the day after the shooting, Umstot admitted to the police that he had been untruthful; he told the officers how the incident actually occurred, including appellant's involvement in the shooting.

The police lifted fingerprints from the driver's door of the car Umstot was driving at the time of the shooting. The fingerprints on the driver's door proved to be that of appellant.

The Commonwealth introduced a copy of text messages Cueto's phone sent to and received from another phone in the hours before the shooting. In the messages,

---

[7] At trial, Umstot said he admitted to the police that he and Cueto had been smoking marijuana.

8

Cueto indicated that he had Xanax to sell and that he would meet the other person at the Applebee's on General Booth Boulevard.

Emily Knight was appellant's girlfriend on May 1, 2016. Knight left Suffolk that day with appellant, Jacquan Wilson, and Jolissa Liskey, and went to the Harbor North apartment complex in Chesapeake, where appellant and Wilson both lived. Knight and Liskey dropped off appellant and Wilson, then returned to Harbor North later. The four of them then drove to the Applebee's on General Booth Boulevard in Virginia Beach. Knight and Liskey left the two men there, and drove to a nearby Arby's to use the restroom. While Knight was waiting in the car outside Arby's, she heard a gunshot. Knight and Liskey returned to Applebee's, but did not see appellant and Wilson. However, Knight and Liskey spotted appellant and Wilson walking on General Booth Boulevard, picked them up, and returned to Harbor North. As they drove, Wilson commented that "Kilo shot someone." Appellant's nickname was "Kilo." Later, at Harbor North, Knight saw both appellant and Wilson with bars of Xanax.

On the evening of May 1, 2016, Wilson posted on his Facebook page, "Xannys on deck." A page from one of appellant's Facebook accounts pictured appellant and Wilson together. Appellant had Facebook accounts under the names "El Kilo Juarez" and "Left Field James."

Appellant contends that Umstot's testimony was inconsistent with statements he made to the police, inherently incredible, and unworthy of belief. However, "determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact." *Parham v. Commonwealth*, 64 Va. App. 560, 565, 770 S.E.2d 204, 207 (2015). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Juniper v. Commonwealth*, 271 Va. 362, 415, 626 S.E.2d 383, 417 (2006) (quoting *Cardwell v. Commonwealth*, 209 Va. 412, 414, 164 S.E.2d 699, 701 (1968)). "The mere fact that a witness may have . . . given inconsistent statements during the investigation of a crime does not necessarily render the testimony unworthy of belief." *Id.* "This circumstance is appropriately weighed as part of the entire issue of witness credibility, which is left to the [fact finder] to determine." *Id.*; *see also Fordham v. Commonwealth*, 13 Va. App. 235, 240, 409 S.E.2d 829, 832 (1991) ("Prior inconsistent testimony is a factor in determining the credibility of a witness, but it does not automatically render the witness' testimony incredible.").

Appellant does not dispute that he was present at the scene of the shooting, he argues only that he did not participate in the crimes. "A principal in the first degree is the actual perpetrator of the crime. A principal in the second degree, or an aider or abettor as he is sometimes termed, is one who is present, actually or constructively, assisting the perpetrator in the commission of the crime." *Muhammad v. Commonwealth*, 269 Va. 451, 482, 619 S.E.2d 16, 33 (2005) (quoting *Jones v. Commonwealth*, 208 Va. 370, 372, 157 S.E.2d 907, 909 (1967)). As this Court has held many times, a "principal in the second degree may be indicted, tried, convicted and punished as if a principal in the first degree." *Allard v. Commonwealth*, 24 Va. App. 57, 62, 480 S.E.2d 139, 141 (1997). While the

> Commonwealth must prove that the principal in the first degree committed the offense to sustain a conviction of a principal in the second degree, *see Sutton v. Commonwealth*, 228 Va. 654, 665, 324 S.E.2d 665, 671 (1985), proof of "actual participation in the commission of the crime is not necessary" "to make a person a principal in the second degree," *Muhammad*, 269 Va. at 482, 619 S.E.2d at 33 (quoting *Jones*, 208 Va. at 372, 157 S.E.2d at 909). To support a conviction under this theory, the Commonwealth must prove that the accused was present at the scene of the crime and shared the criminal intent of the perpetrator or committed some act in furtherance of the offense. *See Allard*, 24 Va. App. at 62, 480 S.E.2d at 141. Thus, while mere presence at the scene of a crime alone does not constitute aiding and abetting, "accompanying a person with full knowledge that the person intends to commit a crime and doing nothing to discourage it bolsters the perpetrator's resolve, lends countenance to the perpetrator's criminal intentions, and thereby aids and abets the actual perpetrator in the commission of the crime." *Pugliese v. Commonwealth*, 16 Va. App. 82, 94, 428 S.E.2d 16, 25 (1993).
>
> The evidence proved that appellant and Wilson parted ways with Knight and Liskey in the Applebee's parking lot before the shooting. Appellant and Wilson both approached Umstot's car together. Appellant stationed himself beside the driver's door of the car, thus "lend[ing] countenance" to Wilson's criminal intentions. *See id.* Once Cueto produced the bag of Xanax and was busy counting pills, appellant nodded. Wilson pulled out a gun. When Cueto did not readily surrender the drugs, appellant told Wilson to "pop him." Wilson shot Cueto and grabbed the drugs. Wilson and appellant fled the scene together. Later, both Wilson and appellant had Xanax bars, the same drug taken from Cueto, thus proving that Wilson and appellant had planned to rob Cueto, worked together to accomplish the crime, and shared in the proceeds.
>
> Considering the facts and circumstances, a reasonable finder of fact could find beyond a reasonable doubt that appellant was guilty of robbery, conspiracy, and two charges of using a firearm in the commission of a felony.

(ECF No. 25-1, at 1–6 (footnote numbers altered, all other alterations in original) (paragraph number omitted).)

The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the state court's analysis. *See* 28 U.S.C. § 2254(d)(1)–(2). Rather, the evidence, as described by the Court of Appeals of Virginia, amply supports McInnis's convictions. Accordingly, Claims Two and Three will be DISMISSED.[8]

---

[8] To the extent that either Claim Two or Three could be construed as a challenge to the admissibility of certain pieces of evidence, such a claim is not cognizable in federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (observing that "it is not the province of a federal habeas court to reexamine state–court determinations on state–law questions") (citing


## V. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### *A. Claim One*

In Claim One, McInnis alleges that "defense counsel failed to investigate what led to [McInnis's] arrest, who was accusing [McInnis] of such crimes, and why [McInnis] was not given the opportunity to confront [his] accuser." (ECF No. 6, at 6.) Claim One appears to be based on McInnis's belief that his co-defendant, Wilson, made statements to the police against him and that McInnis was never was given the opportunity to confront Wilson. (*Id.*) Claim One fails for several reasons.

First, McInnis has failed to allege with specificity exactly how counsel's performance was

---

*Lewis v. Jeffers*, 497 U.S. 764, 750 (1990)). Likewise, this Court may not second–guess a state court's application of the Virginia Rules of Evidence, which is inherently a state court issue. *See Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) (noting that the Constitution "does not permit the federal courts to engage in finely–tuned review of the wisdom of state evidentiary rules").

deficient. The Commonwealth provided McInnis with a copy of Wilson's interview along with a host of other documents and records related to the Commonwealth's case against McInnis. (*See* ECF No. 27-1, at 1–5.) Thus, counsel knew what Wilson said to police and had ample information concerning the basis for McInnis's arrest. McInnis does not identify what further investigative steps he believes counsel should have taken, nor does he specify what benefit he believes said investigation would have provided. McInnis cannot demonstrate ineffective assistance of counsel based on such vague, conclusory, and speculative allegations. *See United States v. Roane*, 378 F.3d 382, 400 (4th Cir. 2004) (explaining that "[a]iry generalities" and "conclusory assertions . . . [do] not suffice to stave off summary judgment or entitle a habeas petitioner to an evidentiary hearing" (alterations in original) (some quotation marks omitted) (citation omitted)).

Second, McInnis has failed to demonstrate that any testimonial evidence from Wilson was admitted against him at trial. It is well established that:

> The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Amendment contemplates that a witness who makes testimonial statements *admitted* against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him.

*Giles v. California*, 554 U.S. 353, 357–58 (2008) (alterations in original) (emphasis added) (quoting *Crawford v. Washington*, 541 U.S. 36, 68 (2004)). Because McInnis has failed to demonstrate that any testimonial evidence from Wilson was "admitted" at trial, he has failed to demonstrate that he had a right to confront Wilson. *Id.* Thus, he has failed to show that counsel was ineffective for not confronting Wilson. In that vein, he has also failed to demonstrate that he suffered any prejudice. Simply put, nothing that Wilson may have said to the police was admitted against McInnis at trial.

Because McInnis has failed to show that counsel was deficient, much less that he was

12

prejudiced in any way, Claim One lacks merit and will be DISMISSED.

### *B. Claim Four*

In Claim Four, McInnis argues that "defense counsel failed to object to [the] insufficiency of [the] evidence" at trial. (ECF No. 6, at 8.) Claim Four also fails for several reasons.

First, McInnis's argument is based on a faulty premise. Following the Commonwealth's case-in-chief, counsel made a motion to strike the evidence on the grounds that it was insufficient. (Aug. 9, 2017 Tr. 420–22.) Later, at the close of evidence, counsel made a renewed motion to strike, again challenging the sufficiency of the evidence. (Aug. 9, 2017 Tr 440.) Given the fact that counsel clearly raised at least two challenges to the sufficiency of the evidence at trial, the Court fails to discern, and McInnis fails to explain, how precisely counsel was deficient in this regard. The mere fact that the Circuit Court concluded that the evidence was sufficient to hand the case over to the jury does not negate the fact that counsel raised the issue at the appropriate times and in the appropriate manner. Once again, McInnis's vague and conclusory allegations are insufficient to demonstrate ineffective assistance of counsel. *Roane*, 378 F.3d at 400.

Second, and arguably more importantly, the evidence against McInnis in this instance was clearly sufficient not only to send the case to the jury but also to sustain his convictions. *See supra* Sec. IV. Thus, Claim Four fails because McInnis cannot show that he suffered prejudice.

Because McInnis has failed to show that counsel was deficient, much less that he was prejudiced in any way, Claim Four lacks merit and will be DISMISSED.

### VI. <u>CONCLUSION</u>

For the reasons stated above, the Motion to Dismiss, (ECF No. 26), will be GRANTED. The § 2254 Motion, (ECF No. 6), will be DENIED. A certificate of appealability will be

13

DENIED.[9] The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

Date: 29 August 2022
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge

---

[9] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). McInnis has not satisfied this standard. Thus, a certificate of appealability will be DENIED.